IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**GREENWICH INSURANCE COMPANY**                                                 **PLAINTIFF**

**V.**                                          **CAUSE NO. 3:14-CV-190-CWR-LRA**

**MISSISSIPPI WINDSTORM**                                            **DEFENDANT**
**UNDERWRITING ASSOCIATION**

## ORDER

Before the Court are the parties' cross-motions for summary judgment. Docket Nos. 53, 68. The motions are fully briefed and ready for adjudication.

**I.**     **Factual and Procedural History**

Greenwich Insurance Company sells several lines of insurance in Mississippi. One of them is Multiple Peril Crop Insurance (MPCI).

The Mississippi Windstorm Underwriting Association (MWUA) aggregates funds from its members – property insurers in Mississippi, including Greenwich – and buys reinsurance. When its members incur losses and reinsurance proceeds fail to cover the shortfall, it assesses its members to make up the difference.

MWUA's assessment is based on the amount of *certain* property insurance written by each member. The Court emphasizes "certain" because federal law prohibits associations from assessing MPCI premiums, either directly or indirectly. 7 C.F.R. § 400.352. When insurance companies report their property insurance to MWUA, then, they know to report their MPCI business on a special line, apart from other, "assessable" lines of business.

In 2004, Greenwich reported its 2003 business to MWUA. It said that the assessable portion of its business was $3,049,013.

That number was unchallenged for many years and perhaps would have remained uncontested were it not for Hurricane Katrina. The storm which made landfall in 2005 resulted in years of disruption and litigation in the insurance industry and beyond. The relevance to this suit is that in 2012, the Mississippi Supreme Court ruled that MWUA had to adjust its 2004 assessment, which was based upon 2003 data. *Mississippi Windstorm Underwriting Ass'n v. Union Nat. Fire Ins. Co.*, 86 So. 3d 216 (Miss. 2012).

As a result, in August, October, and December 2012, MWUA told its members that a "true-up" would be conducted. It set a deadline of January 1, 2013, for its members to revise their 2003 data. MWUA specifically noted that no extensions would be permitted.

Greenwich timely responded. Its Assistant Vice President signed the response form indicating that Greenwich would not be amending its data.

In February 2013, MWUA sent its members, including Greenwich, a letter stating the percentage of the assessment each member would be responsible for paying. The letter contained an April 1, 2013 deadline for members to object to the data or calculations.

Greenwich again did not object. Instead, in March 2013, its Assistant Vice President signed and returned a form confirming its data. She specifically certified that the information was final, subject to recalculation only by MWUA's own audit or calculation errors, or errors noted by the member during a limited review period.

In December 2013, Greenwich received the bill showing the amount of the assessment. It was for approximately $4.1 million. Aggrieved, Greenwich commenced an investigation and learned – apparently for the first time – that it had incorrectly reported its 2003 data. Although it had reported $3,049,013 in assessable business, it should have reported $285,681. Greenwich also attempted to revise its reporting of MPCI from $0 to approximately $4.7 million.

2

Greenwich paid the $4.1 million under protest in January 2014 and requested an opportunity to amend its 2003 data. The request was denied. This suit followed.

## II. Present Arguments

### A. Greenwich's Motion

Greenwich contends that MWUA is indirectly assessing MPCI in violation of federal law. Greenwich reasons that although it misreported its 2003 data and then stood by it for years even past the deadline to amend, it is now entitled to amend its submission. The crux of its argument is that federal law preempts MWUA's adherence to a firm deadline.

MWUA responds that it has never assessed MPCI and did not attempt to assess MPCI in this case: it properly assessed the "Allied Lines" business. Greenwich's own error caused the $4.1 million assessment, it says, and the deadline to amend has passed. MWUA denies that federal law preempts it from imposing and then sticking to a deadline.[1]

### B. MWUA's Motion

MWUA seeks summary judgment on its statute of limitations, laches, equitable estoppel, and waiver defenses. It claims that Greenwich knew or should have known in 2004 that its 2003 data were incorrectly reported, given its own contemporaneous internal reports, and that such knowledge makes this suit untimely. MWUA also contends that Greenwich has waived its right to amend given the certifications of its Assistant Vice President during the true-up.

Greenwich responds that its cause of action did not accrue until it was injured, which was when it received the $4.1 million assessment. It adds that laches cannot apply because it

---

[1] MWUA also contends that summary judgment is inappropriate because there is a fact dispute as to the amount of assessable insurance Greenwich truly wrote in 2003. It bases this argument off of Greenwich's 2004 state tax return with data matching Greenwich's 2004 submission to MWUA. The argument is that Greenwich's actions are hypocritical, since although the purpose of preemption in this context is to avoid using federal funds to pay state taxes, Greenwich has refused to amend its 2004 state tax return and therefore is continuing to pay state taxes on the full amount. The Court need not reach this argument.

promptly brought this suit after the assessment, and says MWUA's laches argument is unfair because MWUA has previously offered insurance companies refunds for errors made after deadlines. A recurring theme of its response is that MWUA's defenses are irrelevant because the deadline is preempted by federal law.

### III.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quotation marks and citation omitted).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. Fed. R. Civ. P. 56(c)(1); *see Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010) ("With respect to an issue on which the nonmovant would bear the burden of proof at trial, if the movant for summary judgment correctly points to the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant, in order to avoid an adverse summary judgment on that issue, must produce sufficient summary judgment evidence to sustain a finding in its favor on the issue.").

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would

prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## IV. Discussion

### A. Greenwich's Motion

At the outset, it is worth noting how far today's dispute lies from the leading MPCI preemption cases.

In one prominent case, the Massachusetts Commissioner of Revenue announced its intent to tax every insurance company's federally-reinsured MPCI. *ACE Prop. & Cas. Ins. Co. v. Comm'r of Revenue*, 770 N.E.2d 980, 983 (2002). That state's highest court concluded that the Commissioner's intent was preempted by federal law.

In another leading case, the State of Kansas sought to invalidate and enjoin the federal preemption regulation, apparently to maintain some state taxation of reinsured MPCI and enforce various state laws on garnishment, liens, and attachments. *State of Kan. ex rel. Todd v. United States*, 995 F.2d 1505, 1508 (10th Cir. 1993). The Tenth Circuit upheld the regulation.

Here, in contrast, MWUA is not attempting to tax MPCI, directly or indirectly. It simply seeks to enforce a reporting deadline. All of its members had to report their 2003 assessable business in 2004. When the true-up became necessary after Katrina, MWUA gave its members multiple opportunities to check and correct their reporting of their 2003 data. Greenwich decided to reaffirm its prior submission. Greenwich's complaint arose months after every deadline passed.

"The party asserting federal preemption has the burden of persuasion." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) (citations omitted). In this case, the Court is

5

not persuaded that a deadline is an indirect assessment of MPCI. Greenwich has not pointed to any statute, regulation, or case law saying as much. That is probably enough to deny the motion.

Pressing on, though, leads to some concern about the systemic consequences of Greenwich's argument. The logical result of Greenwich's argument is that an insurance company is forever allowed to amend its crop insurance assessment forms, even if it made an error decades ago.[2] If an error was discovered in a company's 1997 submission, for example, MWUA would have to accept the amendment, issue a refund, and then assess every other member company to make up the shortfall. The result is that there would never be any finality in the system; no one could ever close their books on a fiscal year.[3] That cannot be what Congress intended.

It also seems unlikely that the preemption of indirect assessments was intended to apply to basic administrative and operational needs like deadlines, as opposed to more nefarious schemes. There is definitively a difference between an indirect scheme intended to tax MPCI – by basing assessments off of an insurance company's total business, for example, without "directly" asking about MPCI premiums – and a deadline intended to meet the practical administration of business. In cases like this, an organization like MWUA (and its members) needs to responsibly make collections, purchase reinsurance, and close its books with reasonable predictability. Making every deadline voidable, no matter how distantly related to MPCI, would not achieve that interest.

---

[2] An insurance company may even have an *incentive* to review all of its prior submissions, comb them for errors, and seek to resubmit data for a number of years. The only barrier to such a review would be if the expected costs of the accountants' review exceeded the expected benefit of the amendment.
[3] Greenwich disagrees, arguing that "[t]he issue presented by Greenwich in this action is unique and the Court's holding could likewise be narrowly tailored." Greenwich has not explained how a favorable ruling would not apply as a matter of logic to every other MPCI deadline imposed by MWUA or any other comparable association.

For these reasons, Greenwich's motion will be denied. At a point in the near future, the parties shall be prepared to discuss whether it is appropriate to make Greenwich's preemption theory immediately appealable under 28 U.S.C. § 1292(b), with any trial of this matter to be stayed during the pendency of that appeal.

### B. MWUA's Motion

The Court has reviewed the parties' submissions on MWUA's statute of limitations, laches, equitable estoppel, and waiver defenses. It agrees with Greenwich that there are fact disputes precluding summary judgment. These defenses will have to be resolved at trial.

### V. Conclusion

The motions are denied.

**SO ORDERED**, this the 30th day of April, 2015.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE